UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Bruce Roemmich, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER GRANTING IN PART AND** |
| vs. ) | **DENYING IN PART DEFENDANTS'** |
| ) | **MOTION AT DOCKET NO. 58** |
| Eagle Eye Development, LLC; ) | |
| Leland Bertsch; Jane Bertsch; ) | |
| Janet Scholl; and Jon Wagner, ) | |
| ) | Case No. A1-04-079 |
| Defendants. ) | |

On September 13, 2005, this court entered an order that, among other things, granted in part defendants' motion for summary judgment with respect to the defense of statute of limitations. The court ruled that any of plaintiff's claims that had accrued prior to April 13, 1998, were barred by the six-year statute of limitations.

Since the issuance of the court's opinion, a disagreement has arisen between the parties as to the meaning and scope of the order. Defendants claim that the court's ruling means that all claims arising out of transactions occurring prior to April 13, 1998, are barred. Consistent with this belief, defendants have filed a motion (Doc. No. 58) to exclude evidence of each and every exhibit and item of evidence that relates, all or in part, to occurrences prior to April 13, 1998.

Plaintiff opposes the motion arguing that what is dispositive is not when the events giving rise to the claims occurred, but rather when any particular claim "accrued." In that regard, plaintiff argues that his claims did not accrue until he knew, or should have known, of the existence of the claims and the likelihood he was suffering some injury, and that this did not occur until after April 13, 1998. Plaintiff also argues that some of the pre-April 13, 1998, evidence is relevant for other

purposes, *e.g.*, proof of motive, pattern of conduct, etc., with respect to post-April 13, 1998 transactions.

The court concludes that defendants' motion sweeps too broadly to the extent it seeks to exclude all evidence and exhibits relating to events occurring prior to April 13, 1998. There are several reasons why this is the case.

First, defendants have not convinced the court that there are no material facts in dispute with respect to the timeliness of all of plaintiff's claims such that the court can simply exclude all evidence and exhibits relating to pre-April 13, 1998, events and transactions. Second, the relationship between the parties continued post-April 13, 1998, so that some of the events occurring prior to April 13, 1998, may be relevant to post-April 13, 1998, matters. Third, in the event liability is found, N.D.C.C. § 10-32-119(4) instructs, among other things, "that the reasonable expectations of the members as they exist at the inception and develop during the course of the members' relationship with the limited liability company and with each other" are relevant to the issue of whether relief should be ordered. Consequently, certain evidence relating to pre-April 13, 1998, matters may be admissible for this purpose. Fourth, there appears to be several layers of issues, some of which are quite broad and depend upon numerous items of fact (for example, the claim of "freeze out") and some of which are relatively narrow (such as whether Eagle Eye money with respect to a particular transaction was improperly diverted to one or more of the defendants), and, the court is reluctant to start excluding evidence by focusing upon one issue and only to discover, given the complexity of the matters, that the evidence is also relevant to another issue.

What defendants are really seeking by bringing the motion to exclude evidence is a more definitive ruling with respect to the motion for summary judgment that the defendants previously filed seeking to bar certain plaintiff's claims on statute of limitations grounds. While there are

substantial questions regarding the timeliness of a number of plaintiff's complaints relating to pre-April 13, 1998, transactions, the court concludes the record does not permit a ruling at this point with respect to all of such claims because there appears to be material facts in dispute with respect to a number of the claims as to when the claims accrued

The loans allegedly made by one or more of the defendants to Eagle Eye are examples. Defendants argue it is too late to challenge these loans because plaintiff was put on notice of the loans prior to April 13, 1998, and point to the following evidence as establishing this fact:

1. <u>The letters written to the banks and the defendants in 1996 charging breaches of trust and fraud</u>.

It may very well be, after the court considers all the evidence in context and after making the necessary credibility determinations, that the concerns expressed in these letters are broad enough to be considered evidence of the fact that plaintiff knew or should have known of the loans (including any alleged impropriety in the loans), such that the court can conclude plaintiff had notice. However, at this point, there are arguments that the letters can be read more narrowly to relate only to construction-related transactions.

2. <u>Attorney Larson's inspection of the Eagle Eye books</u>.

It may be that plaintiff was put on notice of one or more of the loans by virtue of the examination of Eagle Eye records made by plaintiff's attorney Greg Larson. However, at this point, the court cannot determine from the record before it exactly what Larson was shown, much less, whether there is any dispute about what he was shown.

3. <u>Certain financial information allegedly sent to the plaintiff</u>

There is evidence that certain financial information was sent to the plaintiff in 1996. Again, this information may have put plaintiff on notice of one or more of the financial

transactions at issue. However, the record is not sufficiently developed for the court to conclude there are no material disputed facts as to exactly what was sent, whether it was sent to the appropriate address, what reasonably can be concluded from the records, etc.

4. <u>Letter written buy Dr. Scott Devous</u>

Defendants point to a letter written by a Montana doctor, who was negotiating with plaintiff to buy his interest in Eagle Eye in 1996, to Eagle Eye's attorney. While this may be strong circumstantial evidence of notice, the court cannot conclude just from this letter that are no material undisputed facts in terms of what the plaintiff knew or should have known.

5. <u>May 17, 1997, Meeting Minutes</u>

The May 17, 1997, meeting minutes state that plaintiff looked at a financial statement and questioned certain payables. This also may be enough for the court to conclude that plaintiff was on notice of one or more of the loans if the court concludes this in fact happened. However, at this point, what was said or done at the May 17, 1997, meeting appears to still be in dispute.

Finally, with respect to the loans, the court is uncertain (at least as of this point) whether having knowledge of the loans necessarily equates to having the necessary knowledge, or imputed knowledge, of whether or not consideration had been given for the loans - if that is an issue, which it appears it may be.

While the court is unable to rule with respect to all of plaintiff's claims relating to pre-April 13, 1998, transactions, there are several that clearly are barred. One of these is plaintiff's removal as a governor of Eagle Eye. On several occasions prior to April 13, 1998, plaintiff acknowledged

he was aware he had been removed as a governor. One example is his letter of November 26, 1996. Further, he had been advised by Eagle Eye's attorney by a letter dated December 3, 1996, that he had been removed as an officer and director. (Doc No. 66, Roemmich Dep. at 39-40) Consequently, the court concludes that the propriety of plaintiff's removal as governor is no longer actionable. It is possible, however, that the evidence of plaintiff's removal may be admissible for some other purpose and no ruling is made with respect to this point, one way or the other.

Also, time-barred are claims by plaintiff that he suffered damage as a result of allegedly fraudulent change orders being submitted to the government in connection with the Florida projects. Plaintiff testified in his deposition that he believed back in the late-1996 to 1997 time frame that criminal activity was underfoot with respect to the change orders and contemporaneously expressed that opinion in writing several times. (Doc No. 66, Roemmich Dep. at 54-61) Consequently, he obviously had notice sufficient to press a claim if he had one within six years of that time frame.

Plaintiff may attempt to offer evidence of allegedly fraudulent change orders for some other purpose. While the court makes no ruling now because of its uncertainty with respect to the details and scope of the evidence and the purposes for which it may be offered, plaintiff faces a substantial hurdle in trying to convince the court why such evidence should not be excluded, if for no other reason, on Rule 403 grounds based on the fact that any benefit of the evidence would be substantially outweighed by the burden, time, and cost of trying now, almost ten years after the transactions occurred, to determine whether fraud was committed or not. Moreover, based on the evidence the court has reviewed (which is somewhat limited), it is not at all clear that fraud was committed. For example, the submission of estimated amounts to support change-order claims,

particularly when better data is difficult to compile, is quite common in the court's experience. Further, the defendants were dealing with a sophisticated contracting party.

Plaintiff is also concerned about the possibility that Eagle Eye money went to support projects in Hawaii. The record is somewhat murky with respect to the times and details of these claims. While no ruling is being made now, it appears that such claims are also time barred based on plaintiff's deposition testimony regarding his knowledge of at least some potential Eagle Eye involvement in Hawaii matters. (Doc No. 66, Roemmich Dep. at 35-43)

Finally, given the uncertainties with respect to liability, and also the scope of any liability, the court is concerned about the parties having to prepare for every contingency in terms of litigating proper remedies should liability be found. Consequently, the court is hereby severing the following issues unless both parties are in mutual agreement that the matters should not be severed:

1. To the extent plaintiff is demanding an accounting, the presently scheduled trial will consider only the issue of whether defendants should be required to provide an accounting, and if so, covering what time frames. The actual accounting, if one is required, will be performed later.

2. To the extent plaintiff is demanding to be bought out, the court will only consider whether plaintiff has proved entitlement to a buyout. The price and terms of any buyout (including testimony regarding the value of plaintiff's interest) will be addressed later following any statutory procedures that may be required. (North Dakota law may require such bifurcation; see N.D.C.C. § 10-32-119.) Also, the court will allow the parties some time for expert discovery with respect to the value of plaintiff's interest before that issue is tried, if it has to be tried. Consequently,

        final expert disclosures and discovery on the issue of the value of plaintiff's interest does not have to be completed now.

If this creates uncertainty for either party as to the scope of the presently scheduled trial, please advise my chambers and I will schedule another telephone conference to discuss the concerns.

        **IT IS SO ORDERED.**

        Dated this 23rd day of November, 2005.

        /s/ Charles S. Miller, Jr.
        Charles S. Miller, Jr.
        United States Magistrate Judge