IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Bruce Roemmich, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER FOR AWARD OF FEES** |
| | ) | **AND EXPENSES AND FOR** |
| vs. | ) | **ENTRY OF JUDGMENT** |
| | ) | |
| Eagle Eye Development, LLC; | ) | |
| Leland Bertsch; Jane Bertsch; | ) | Case No. 1:04-cr-079 |
| Janet Scholl; and Jon Wagner, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  BACKGROUND

On August 16, 2006, the court made its initial Findings of Fact, Conclusions of Law and Order and on September 12, 2006, issued its Supplemental Conclusions of Law and Order. What follows is, hopefully, the court's final order, which decides the specific amounts of attorney's fees and expenses to be awarded and orders entry of final judgment. Unless otherwise indicated, the defined terms in the court's earlier orders shall have the same meaning when used in this order.

In its September 12, 2006, order, the court held that the defendants were the prevailing parties on most issues and awarded defendant Leland Bertsch ("Bertsch") 75% of the reasonable attorney's fees incurred by the defendants, as well as 100% of their reasonable expenses.[1] The court directed Bertsch to submit for the court's review a detailed listing of all attorney's fees and other expenses claimed by the defendants.

---

[1] For reasons stated later herein, the award of fees and expenses will be modified so that it is made to Bertsch and Eagle Eye Development, LLC, jointly.

1

In response to the court's directive, Bertsch filed a spreadsheet on September 21, 2006, listing the defendants' attorney's fees and expenses by date, reference number, and payee. Bertsch claimed attorney's fees totaling $63,525.25, prior to the 75% adjustment, and expenses of $41,152.22, for a total amount of $88,796.16 after the 75% adjustment on the fee portion.

Roemmich objected to Bertsch's spreadsheet on grounds that it amounted to nothing more than a cursory summary that was both vague and unsubstantiated. Highlighting the dearth of supporting documentation, such as time records, invoices, or verified statements of cost, Roemmich argued that the defendants should recover nothing as they had failed to meet their burden of establishing reasonable attorney's fees, costs, and expenses. In the alternative, Roemmich requested an order from the court directing Bertsch to supplement his spreadsheet with additional documentation so that Roemmich could ascertain the basis for the claimed expenses and fees and respond appropriately.

Following a telephone conference call with the parties on October 5, 2006, the court directed Bertsch to provide Roemmich with additional documentation regarding the defendants' attorney's fees, costs, and expenses. On October 6, 2006, Bertsch filed a supplement to his spreadsheet captioned "Statement and Supporting Documentation as to Attorneys Fees and Exhibits." In addition, on October 11, 2006, he filed a limited response to Roemmich's objections.

On October 27, 2006, Roemmich filed a response to Bertsch's supplemental materials and expressed his opposition to, *inter alia*, the taxation of estimated expenses, fees for online legal research, and expenses for an expert who had not been disclosed and who did not testify at trial. Pending the submission of further documentation and additional explanation by Bertsch, Roemmich argued that any award of attorney's fees, costs, and expenses be reduced by $25,396.96.

The court conducted another telephone conference with the parties on November 9, 2006. Thereafter, on November 17, 2006, Bertsch filed additional materials regarding the claimed attorney's fees, costs, and expenses. Specifically, Bertsch filed a supplemental brief addressing Roemmich's challenges to his earlier submissions along with supporting affidavits from Jon Wagner, Dianne Kindseth, and attorney David Bliss, together with a revised spreadsheet detailing the fee and cost requests. The revised totals were requests for attorney's fees of $61,364.25, prior to the 75% adjustment, and expenses of $43,313.65, for a total amount of $89,336.84 after the 75% adjustment on the fee portion.[2] Although Bertsch conceded in his brief that online legal research could not be awarded independently of attorney's fees, he maintained that all other costs and fees listed in the spreadsheet were necessarily incurred and otherwise reasonable.

On December 15, 2006, Roemmich filed a reply to Bertch's most recent submissions. He asserted that the defendants' claimed fees and cost should be reduced by $36,037.98. To illustrate how he arrived at this figure, Roemmich provided the court with the following summary of the costs and expenses claimed by the defendants that he claimed were unreasonable or otherwise not recoverable:

| | | |
|---|---|---|
| I. | Estimated Costs and Expenses | $1,822.50 |
| II. | Brady Martz's Estimated "Consulting" Cost | $750.00 |
| II. | Estimated Legal Fees | $2,500.00 |
| IV. | Attorney's Fees (In addition to Estimated Legal Fees) | $7,922.75 |
| V. | Elaine Wagner's Clerical Charges | $155.00 |
| VI. | Copying Costs | $1,400.00 |
| VII. | Eagle Eye's Phone and Fax Charges | $472.50 |
| VIII. | Federal Express | $31.95 |
| IX. | Eagle Eye's Miscellaneous Expenses - Organize File & Parking | $270.00 |
| X. | On-line research | $ 210.00 |

---

[2] The court has used these total amounts as the starting point in making its adjustments to the fees and expenses that are awarded in this case.

| | | |
|---|---|---:|
| XI. | Expert Fees | |
| | A. Brady Martz | $5,915.00 |
| | B. Robert Wilkes - Par Sell Dev. | $13,250.00 |
| | C. Johnson & Johnson | $437.50 |
| XII. | Interest on David R. Bliss Account | <u>$900.78</u> |
| | Total Reduction: | $36,037.98 |

On December 22, 2006, Bertsch filed an additional brief and affidavit responding to Roemmich's prior submittal and replacing some of the estimated attorney's fees with actual numbers based on recent invoices.

Having reviewed the material filed by the parties, the court concludes the primary disputes are legal and not factual. Consequently, a hearing is not necessary, which the parties confirmed during a phone conference on December 27, 2006.

## II.    AWARD OF ATTORNEY'S FEES AND EXPENSES

### A.    Introduction

As discussed in more detail in the court's order of September 12, 2006, the court is making its award of attorney's fees and costs pursuant to N.D.C.C. § 10-32-119(8), which permits an award of reasonable expenses, including attorney's fees and disbursements, if the court concludes that a party has acted arbitrarily, vexatiously, or otherwise not in good faith. The court interprets this statute as permitting a recovery of fees and expenses broader than what would normally be permitted in the absence of a cost and fee shifting statute.

### B.    Rulings on objections to claimed attorney's fees

#### 1.    Tschider & Smith's attorney's fees

The firm of Tschider & Smith initially represented all of the defendants, but withdrew very early in the litigation because it perceived it had a conflict. Most of the claimed Tschider & Smith

fees are pre-withdrawal, but some are post-withdrawal and are for work that Tschider & Smith continued to perform as corporate counsel of Eagle Eye.

Roemmich objects to all of the Tschider & Smith fees because of the withdrawal, duplication of effort, and lack of necessity for the post-withdrawal work. In response, Bertsch argues that all fees of Tschider & Smith and replacement counsel should be recovered because Roemmich requested that Tschider & Smith withdraw.

The court agrees with Roemmich. Either Tschider & Smith needed to withdraw or it did not. And, since the firm made the decision to withdraw, the court is not going to now second guess that decision and hold Roemmich responsible for the consequences.

The primary concern with the Tschider & Smith pre-withdrawal fees is that Roemmich not bear the brunt of (1) duplication of fees because of a need to change attorneys, and (2) fees charged for dealing with the withdrawal, as opposed to work on the litigation case that was required regardless of who performed the work. The court has reviewed the Tschider & Smith invoices for the period of 6/30/04 to 12/29/04 and finds that the hours charged and work performed were reasonable and would have been performed by anyone who handled the case. Consequently, the amount of these invoices, which total $5,001.00, will be allowed, but an appropriate adjustment will be made to avoid duplication of effort with respect to replacement counsel's fees. This is addressed in the next section.

The remaining Tschider & Smith fees totaling $1,379.50 will not be allowed. Some of these fees are for the handling of the conflicts situation and the transition to replacement counsel. The remainder are not being awarded because the court is limiting the award to the direct litigation fees, which, post-withdrawal, are the Bliss fees. The Tschider & Smith fees that have not been included,

however, may very well be proper business expenses of Eagle Eye, and Roemmich, as a part owner of Eagle Eye, may ultimately bear part of the burden of these fees.

### 2. Time spent by replacement counsel in "getting up to speed"

Roemmich objects to certain amounts of the Bliss fees stating that plaintiff should not have to bear the burden of new counsel familiarizing himself with the case on account of prior counsel having to withdraw.  Bertsch argues that all fees should be recovered because Roemmich requested that Tschider & Smith withdraw.

For the reasons already discussed, the court agrees with Roemmich, but is taking a somewhat different approach given its ruling with regard to the Tschider & Smith fees.  After reviewing the invoices and considering the nature of the issues involved, the court believes 15 hours to be a sufficient amount of time to allow attorney Bliss to get up to speed.  To avoid Roemmich bearing the consequences of duplication of effort, the court will deduct $2,100 (15 hours * $140) from the total attorney's fees claimed.

### 3. Legal fees following the court's initial order regarding the merits and fees incurred to prove up recoverable fees and costs

Roemmich objects to a recovery of fees following the court's decision on the merits of the action.  The court will allow some of the fees, but is reducing the amount being claimed by $1,400 because Bertsch made the process of calculating the recoverable fees and costs more complicated than it needed to be by not providing the necessary information with his initial submittals and also by arguing for recovery of such items as "parking tickets."  Further, the court needs to draw the line at some point and declines to award the final "estimated" attorney's fees of $185.09.  Consequently, the total reduction for this category will be $1,585.09

### 4. Miscellaneous objections

Roemmich has also objected to several other specific items, including time spent by a paralegal on one occasion, time spent by Bliss communicating with Tschider & Smith about the decision, and a charge to bring in extra help to assemble documents for trial. While the court is not inclined to award the Tschider & Smith costs, some communication with the client by trial counsel is part of any representation on a litigation matter, including communication with corporate counsel. The court finds that the amounts objected to were reasonable in time and amount. Likewise, the same is true for the complained about paralegal item and the additional expense for trial preparation, which is essentially a paralegal expense. Consequently, there will be no deduction for these items.

### 5. Summary and total amount of attorney's fees awarded

After making the foregoing adjustments, the total amount of allowed attorney's fees is $56,299.66, which when multiplied by the 75% factor previously established, amounts to a net attorney's fees award of $42,224.75.

In making this award, the court has also considered the total number of attorney hours spent and the rates charged. The court finds both to be more than reasonable given the nature of the services performed and the complexity of the issues involved.

## C. Rulings on objections to claimed expenses

### 1. Brady Martz billings

Brady, Martz & Associates, P.C.["Brady Martz"] provided Bertsch with professional accounting services and expert testimony. The total amount in Brady Martz fees being claimed by Bertsch is $20,099.05, of which $750 is an estimated amount for tax work that Bertsch claims is

needed to address the consequences of the litigation. Roemmich argues that this should be reduced by at least $5,915.00.

The amount of accounting work required in this matter was considerable, particularly given Roemmich's claims of fraud over a considerable time period that was made more difficult given the amount of time that had passed. As explained by the court in prior orders, the responsibility for this falls entirely upon Roemmich.

The court has carefully reviewed each one of the Brady Martz bills in terms of the amount charged for each item of work performed and finds the work and the amounts charged to be reasonable. The court will award the full amount of the Brady Martz costs, except for the estimated amount of $750 to address potential tax consequences. Consequently, $750 will be reduced from the total amount of expenses claimed.

### 2. Par Sell Development

Roemmich objects to the inclusion of $13,250.00 in consulting fees paid by Bertsch to Par Sell Development for the involvement of Robert Wilkes, the federal official who oversaw the development of the two Florida post-office projects and who had left government service by the time of the litigation. Initially, the fees were claimed as "expert" fees, but Bertsch now acknowledges that he was a fact witness.

Roemmich argues there is no authority for awarding fees paid to fact witnesses aside from statutory witness fees. He also objects to the reasonableness of the charges claiming that, at $125 per hour, this would have amounted to 106 hours He argues this was far in excess of what would have been reasonably required to review documents and prepare for and attend his deposition.

In this case, the award is being made pursuant to state substantive law that allows recovery of reasonable expenses essentially as an item of damage. Consequently, the court has more discretion in what it can award than if it was applying the statutes that normally govern taxation of costs.

N.D. R. Prof. Conduct 3.4(b) states in relevant part that an attorney shall not "offer an inducement to a witness that is prohibited by law." While the court is not aware of any North Dakota case law or ethics opinions on point, most jurisdiction have construed similar language as prohibiting payments to fact witnesses for the substance of their testimony, but allowing compensation for time spent in preparation for, and testifying at, trial or deposition, at least when the circumstances warrant such compensation. See generally Prasad v. MML Investors Services, Inc., 2004 WL 1151735, *5-6 (S.D.N.Y. 2004); J. Kinsler & G. Colton, Compensating Fact Witnesses 184 F.R.D. 425 (1999); Cal. St. Bar. Comm. Prof. Resp., Formal Opinion 1997-149, 1997 WL 197243; ABA Formal Ethics Opinion 96-402. One of these circumstances is when a fact witness has to spend significant time reviewing records in order to testify. Permitting additional compensation in this situation is fair to the witness. Also, it promotes justice to the extent it results in testimony that is more accurate and meaningful and does not limit the parties to calling only those witnesses who have the resources and the willingness to devout significant time without compensation. See id..

On the other hand, payments to fact witnesses over and above the usual statutory allowances warrant special scrutiny to insure that the payments are not being made simply to influence their testimony. Also, there is the countervailing concern of making compensation for fact witnesses the norm and pricing justice out of the reach of some people. See id. Finally, while it may be ethically

9

permissible to provide compensation to fact witnesses in certain circumstances, requiring another party to pay for the decision to do that is another matter.

In this case, given the nature of the fraud charges being leveled by Roemmich, it certainly is understandable that the defendants wanted Mr. Wilkes to review the invoices and other records related to the two Florida post-office projects and consult with their counsel. In fact, prior to Mr. Wilkes's deposition, which was taken by Roemmich's attorney, both parties forwarded a number of documents to Mr. Wilkes to review. Further, the subject matter of Mr. Wilkes's testimony was a significant part of what caused the court to award attorney's fees and costs in the first instance. For these reasons, the court will allow some compensation for the amounts paid to Par Sell Development for Mr. Wilkes's involvement.

On the other hand, the court is not satisfied with the documentation provided in terms of being able to assess fully the reasonableness of the amounts claimed, as well as the need for the increased fee for the preparation and deposition time charged by Wilkes. Also, the justification that Bertsch provided for the Par Sell billings was that Wilkes had to spend considerable time reviewing records in order to testify. No explanation was offered, however, for the 47 hours that was billed for a "real estate evaluation."

After reviewing the invoices and considering the scope of Mr. Wilkes's involvement in terms of the issues involved, the number of documents, and other factors (including the belief that the court should be conservative in terms of what it should award for fact witness reimbursements), the court will limit the recovery to $3,750 (30 hours * $125/hr).

In making this decision, the court is not saying that the amounts paid to Par Sell Development were inappropriate, and it may very well be that the amounts paid are legitimate

business expenses. The court is simply holding that, in its discretion, it will not award the total amount claimed for the reasons indicated. Consequently, for this item, there will be an $9,500 reduction in the expenses claimed.

### 3. Copy costs

Bertsch seeks reimbursement for a total of $4,407.30 in copying costs. Roemmich objects to the $0.25 per-page cost that was charged by attorney Bliss for many of the copies. He also objects to the portion of the total cost that represents an estimate by Bertsch Construction of $1,350.00 of its copying costs allegedly related to the litigation. Accordingly, Roemmich seeks a reduction of $2,605.00 in this category.

The court will not award the estimated copying charges of $1,350, not only because it is an estimate, but also because it appears that many of the documents that Roemmich requested were documents he was to entitled to obtain as a part owner and any copying charges in this instance should have been treated either as Eagle Eye overhead or contemporaneously charged to Roemmich at the time the copies were made.

Also, the court agrees that the $0.25 copying charge is high and would be inclined to reduce the amount charged on all of the copies by attorney Bliss but for the fact that Bliss's attorney rates are more than reasonable and the fact that higher rates would have covered more overhead associated with the copying costs. Nevertheless, for higher volume copying efforts, a lower per-page cost is more reasonable. Thus, for two Bliss invoices, the court is reducing the copying charges to 60% of the amount charged, which approximates a reduction to a more reasonable amount of

$.15 per page for the copies reflected in those two invoices.[3] The total amount of the reduction is $517, which, when added to the $1,350, makes for a total reduction in claimed copy expenses of $1,857.

### 4.    Eagle Eye overhead costs, Elaine Wagner charges, and parking tickets

Bertsch seeks reimbursement for a number of overhead expenses that he claims are directly related to the litigation, some of which are the subject of estimates. Specifically, the items are amounts for time charged for Elaine Wagner for organizing Eagle Eye files, estimated phone and fax charges, and parking tickets. Roemmich objects to all of these expenses.

The court will not award the estimated amounts by Bertsch Construction for phone and fax (totaling $474.50) and is unimpressed by the request for reimbursement for parking tickets ($30). Also, the court will not allow the $100 charge for Elaine Wagner organizing Eagle Eye files since this appears to be a general overhead expense, but will allow the Fed Ex charges and time spent by Elaine Wagner making copies for expert witnesses and consultants since these are directly related to the litigation.

The total reduction that will be made for this category of expenses is $604.50.

---

[3] In reviewing cases addressing copying charges, there was a wide range in terms of what was permitted. A few cases permitted copying charges of $.25 per page or more on the high end with one case limiting recovery to $.05 per copy for high-volume copying. A number of cases, however, found amounts in the range of $.10 to $.15 per copy to be more reasonable. See, e.g., Scoutto v. Secretary of Dept. of Health and Human Services, 1997 WL 588954, *6 (Fed.Cl.1997) ($.25 per copy reduced to $.10 per copy); Antolik v. Saks Inc., 407 F.Supp.2d 1064, 1084 (S.D.Ia 2006) (reversed on other grounds) ($.28 per copy to $.15); Beauticontrol, Inc, V. Burditt, 2002 WL 31689706, *4 (N.D.Tex. 2002)($.25 per copy to $.15 per copy); Mulligan v. City of Chicago, 1999 WL 311691, *4 (N.D.Ill.1999) ($.20 per copy to $.15 per copy). In this case, the court decided on $.15 per copy because the total number of copies was relatively small compared to other litigation that the court sees. In cases in which the numbers of copies are in the tens and hundreds of thousands, $.15 per copy may very well be excessive. In fact, in such cases, the parties may be limited to the costs of electronic scanning because this can be shared with other persons at relatively modest costs and eliminates the necessity for duplicates.

### 5.     Computer assisted research

Bertsch agrees with Roemmich's objection that computer-assisted research is not recoverable in the Eighth Circuit as a taxable expense because it is considered an overhead item that is part of the hourly attorney rate. While the court is proceeding under what is recoverable under state law as an expense, the court is inclined not to award this cost in any event. Hence, there will be reduction of $300 for this item.

### 6.     Private investigator fees

Roemmich objects to the claim of $437.50 in private investigator fees that related to the discovery of certain out-of-state misdemeanor assault convictions. The court in its discretion declines to award these costs. Consequently, there will be a reduction for this item.

### 7.     Interest of Bliss account

Roemmich objects to the claim of interest on the Bliss legal fees of $900.78. While interest is certainly a real-world business expense, the court is not inclined to award this as a recoverable item because of the many factors that can bear upon when payments are made. Consequently, there will be a reduction for this item in the amount of $900.78.

### 8.     Summary and total amount of expenses awarded

After reducing the amount of the total claimed expense by the amounts noted above, the total amount of expenses that is awarded is $28,963.87.

### III.   MODIFICATION OF PRIOR ORDER

In the prior order of September 12, 2006, the court held that the award of fees and costs was in favor of defendant Bertsch since the defendants had conducted a joint defense and the court was of the understanding that Bertsch, as the primary defendant, had undertaken the obligation to pay

the  expenses either directly or through his closely held company, Bertsch Construction.  After further consideration, the court modifies its prior order and the award of fees and costs shall be made to Bertsch and Eagle Eye, jointly, since it appears that Eagle Eye has paid for, or undertaken the obligation to pay for, part of the costs.  Any allocation that may be required between the two can be made by them as their interests appear without the court having to be involved.

**IV.     ORDER FOR ENTRY OF JUDGMENT**

Based on the court's initial Findings of Fact, Conclusions of Law and Order dated August 16, 2006, the court's Supplemental Conclusions of Law and Order dated September 12, 2006, and the foregoing conclusions, the clerk is hereby **ORDERED** to enter final judgment as follows:

1. Plaintiff Roemmich's claims for monetary relief and for an accounting are dismissed with prejudice as to all defendants.  All other claims against defendants Jon Wagner and Janet Scholl are dismissed with prejudice.

2. Defendant Leland Bertsch (hereinafter "Bertsch") and defendant Eagle Eye Development, LLC (hereinafter "Eagle Eye") are awarded jointly 75% of the allowed attorney's fees of $56,299.66, for a net attorney's fees award of $42,224.75, and 100% of the allowed expenses of $28,963.87, for total monetary judgment in favor of Bertsch and Eagle Eye, jointly, and against plaintiff Bruce Roemmich (hereinafter "Roemmich") in the total amount of $71,188.62.

3. Eagle Eye, together with its members and governors, are permanently ordered and enjoined as follows with respect to the operation of Eagle Eye:

    a. Unless specifically authorized by all of the members in writing to the contrary, Eagle Eye shall not engage in any business activity other than that

       which relates to the managing, leasing, or sale of the real estate now owned by Eagle Eye at Mims and Cocoa Beach, Florida and Mora, Minnesota ("Eagle Eye Real Estate") and the making of any distributions to the members.

b. Unless authorized by all of the members in writing to the contrary, Eagle Eye may not use Eagle Eye money for any purpose other than (1) paying the debts incurred to construct and develop Eagle Eye Real Estate, (2) paying expenses for the management, maintenance, repair, improvement, leasing, or sale of Eagle Eye Real Estate, including any debts reasonably incurred for these purposes, (3) paying reasonable salaries and Eagle Eye overhead and operating expenses, including payments to third parties for management and other support services, and (4) making distributions to members.

c. Unless authorized by all of the members in writing to the contrary, beginning in 2007 Eagle Eye shall hold at least one meeting of the members annually, which shall take place after completion of the end-of-year financial statements for the prior year, but no later than the deadline for Eagle Eye filing its annual income tax returns, to discuss, at a minimum, the following subjects:

    i. the operating results for the prior year;

    ii. discussion and approval of the tax returns for the prior tax year;

       iii.    discussion and approval of an operating budget for the next 12 months with budgeted amounts for depreciation, debt service, and each general category of operating expenses; and

       iv.    discussion and a decision as to whether any distributions should be made to the members, including, specifically, distributions to assist members with the payment of their taxes on Eagle Eye income.

d.    Except for debt service payments for liabilities already incurred or legitimate emergencies, no expenditure may be made or liability incurred with respect to any particular item or matter in excess of $ 25,000.00 without the expenditure or liability first being discussed and approved at an annual or special meeting of the members.  And, notwithstanding the foregoing, no compensation may be paid to a governor, member, or manager, nor may payments be made to an entity related to any of the foregoing persons, without the compensation or payments (or the basis for the compensation or payments) first being discussed and approved at a regular or special meeting of the members, with the only exception being the current terms of the arrangements with Bertsch Construction for management, maintenance, and repair of Eagle Eye Real Estate, which the court has already concluded are reasonable.

e.    Eagle Eye shall provide yearly to each member beginning in 2007 copies of the following financial information for the prior calendar year:  the balance sheet and income statement; detailed general ledger; and a copy of the

proposed tax returns to be filed. If not sent earlier, this information shall accompany the notice of the annual member meeting.

f. Minutes shall be prepared reflecting the action taken at all meetings of the members and board of governors and copies shall be sent to the members within ten business days of the date of the meeting. When action is taken by the members or the board of governors without a meeting as may be authorized by Eagle Eye's organizing documents or North Dakota law, written documentation of the action shall be made, kept with Eagle Eye records, and copies sent to the members within ten business days.

g. Within ten days of entry of judgment, if it has not already been done within the last six months in anticipation of the entry of judgment, Eagle Eye shall provide to each member, and each member shall provide to Eagle Eye, an address for all future mailings and notices. If for any reason an address changes, the person whose address changes must provide notice in accordance with section 9.7 of Eagle Eye's Membership Control Agreement.

h. A copy of these provisions shall be affixed to, and become a part of, Eagle Eye Operating Agreement and shall be deemed to supersede any conflicting provisions in either Eagle Eye Operating Agreement or the Membership Control Agreement. Compliance with the foregoing provisions shall not be deemed as satisfaction of any obligations that Eagle Eye, members and governors owe under N.D.C.C. ch.10-32 and Eagle Eye, members, and governors remain responsible for these obligations.

4.  Eagle Eye, together with its members and governors, are permanently ordered and enjoined as follows with respect to the expenses in defending this action:

    a.  Eagle Eye may not pay, or otherwise make reimbursement for the 25% of the allowed attorney's fees of $56,299.66 that Roemmich does not have to reimburse to Bertsch.

    b.  With respect to the expenses that the court concludes Bertsch may recover from Roemmich, Eagle Eye may (but is not required to) reimburse Bertsch for these expenses, including making payment to any Bertsch-related entity that has funded the expenses, but only as cash reasonably becomes available to allow for reimbursement without detriment to Eagle Eye. This includes payment by Eagle Eye of interest on such expenses at the maximum rate permitted by N.D.C.C. § 47-14-09 as of the date of the entry of judgment, but only from and after that date. The fact that the court has established a mechanism for Eagle Eye paying litigation expenses, if it chooses to do so, is not meant to prohibit Bertsch from collecting the judgment amount for expenses awarded him by other means. If Eagle Eye makes payment for the expenses that Roemmich must reimburse Bertsch, Eagle Eye shall account separately for such payments and all payments subsequently made by Roemmich to Bertsch shall go first to reimburse any expenses that have been paid by Eagle Eye including interest. And, when any disbursements are made by Eagle Eye to its members, the amounts payable to Roemmich shall

       be paid first to Eagle Eye and credited against the expenses paid by Eagle Eye until all such expenses, including interest, have been fully reimbursed.

d.   Eagle Eye may pay Bertsch Construction for the reasonable time spent by Wagner in the defense of this action at the rate currently chargeable for Wagner's time by Bertsch Construction. The amounts paid by Eagle Eye for Wagner's time, however, shall be treated like all other Eagle Eye expenses and shall not be included in the pool of litigation-related expenses that are subject to separate reimbursement by Roemmich.

e.   Eagle Eye may not reimburse or otherwise pay the Bertschs for the time they spent in defense of this action.

f.   Except as otherwise specifically provided in this judgment, the forgoing order and injunction does not prohibit Eagle Eye from paying litigation costs and expenses that have not been allowed as part of the court's award of fees and expenses.

Dated this 29th day of December, 2006.

                      /s/ Charles S. Miller, Jr.
                      Charles S. Miller, Jr.
                      United States Magistrate Judge