**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

Bruce Roemmich,                                )
                                               )
                          Plaintiff,           )
                                               )
          vs.                                  )            **Case No. 1:04-cv-00079**
                                               )
                                               )
Eagle Eye Development, LLC; and                )
Leland Bertsch                                 )
                                               )
                          Defendants.          )

---

**THIRD MEMORANDUM IN SUPPORT OF MOTION FOR EXECUTION OF**
**JUDGMENT**

---

Defendants Eagle Eye Development, LLC, and Leland Bertsch (hereinafter "Eagle Eye and

Bertsch") have asked the Court to order the execution of the Court's December 29, 2006 judgment

in regard to the above mentioned matter and to order the United States Marshal to satisfy the

judgment out of the personal property of the judgment debtor.

Process to enforce a judgment for the payment of money shall be a writ of execution unless

the court directs otherwise.  Rule 69(a), Fed. R. Civ. Pro.  The procedure on execution shall be in

accordance with the practice and procedure of the state in which the district court is held.  Id.  North

Dakota law generally allows enforcement of money judgments against the property debtor under

N.D.C.C. 28-21-06.  On application to a court of competent jurisdiction by any judgment creditor

of a member, the court may charge a member's financial rights with payment of the unsatisfied

1

amount of the judgment with interest.  N.D.C.C. 10-32-34.

No execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.  Rule 62(a), Fed. R. Civ. Pro.  In this case, more than 10 days have passed since the judgment was entered by the Clerk of Court and no other orders as to any post judgment execution have been issued by the Court.   Under North Dakota law, execution upon a judgment may be effected at any time within ten years after the entry of judgment.  N.D.C.C. 28.21-01.  Law enforcement may satisfy the judgment with interest and costs against the property of the judgment debtor.  N.D.C.C. 28-21-06.

The defendants respectfully request that the Court issue an order which directs the execution and satisfaction of the judgment against the plaintiff's financial rights held in Eagle Eye Development, LLC.

LAW AND ARGUMENT

I.

**A.**     **Foreclosure of Bruce Roemmich's financial interest in Eagle Eye Development, LLC is proper, and must be allowed.**

A charging order constitutes a lien on the judgment debtor's distributional interest in the LLC.  <u>See</u> *Madison Hills Limited Partnership II v. Madison Hills*, 35 Conn App, 81 644 A.2d 363, cert denied, 231 Conn. 913, 648 A.2d 153 (1994)**.** See also Duncan E. Osborne & Elizabeth M. Schurig, *Asset Protection: Domestic and International Law and Tactics* § 18:4 (2008).  The charging order lien entitles the lienor only to distributions and does "not entitle the transferee to become or to exercise any rights of a member."  Duncan & Schurig, *supra*.  When it appears that distributions will not be timely made, especially when earnings are continually retained and reinvested, the "lien can be foreclosed upon by a creditor who succeeds in convincing a court that the previously issued

2

charging order is not sufficient to satisfy the debt." Id.  Judicial discretion is required, and it is incumbent upon the creditor seeking to exercise foreclosure to show the propriety and necessity in the particular situation.

Charging orders are common to nearly all business entities.[1]  The rules are relatively uniform. See PB Real Estate, Inc. v. Dem II Properties, Not Reported in A.2d, 1997 WL 625465 (Conn.Super. 1997).  Foreclosure, or a "forced assignment in whole" of a stakeholder's interest in an entity, "makes the creditor the permanent owner of the economic rights associated with the partnership or LLC interest."  Seminar, Jeffrey R. Matsen, The Use of Limited Partnerships (LPS) and Limited Liability Companies (LLCS) in Asset Protection Planning, 1 Adv. Legal Issues 51, 67 (2007).

Foreclosure is a major component of the charging order, and has been used whenever appropriate.  It has been found appropriate when a mere charge on the member's interest, a "forced assignment in part," would not be practicable, generally because distributions would not occur for a very long time, if ever.  See Osborne, et al, supra.  Under those circumstances, foreclosure is appropriate, both because it guarantees that the judgment creditor gets, at a minimum, the judgment debtor's rights in the event of dissolution and because it prevents the need to, and associated costs of, continual renewal of the judgment and charging order every ten years.  See NDCC § 28-20-21. If the judgment creditor cannot otherwise pursue other means of satisfaction, foreclosure is the last resort by which to effectively satisfy the judgment and the transferred interest renders unnecessary the need to renew the judgment.

---

[1]  The corporation, which has also developed significantly in the last century, does not provide for a charging order because, since shares of stock are easily sold, if publically traded, or if privately held, are easily liquidated, there is no need for a charging order in the corporation context. See e.g. Merchants Bank & Trust Co. v. Chestnut Tree Hill Partnership, Not Reported in A.2d, 2003 WL 21403958 (Conn. Super. 2003) (charging order denied as to corporation).

**B. Foreclosure has always been available in the charging order context.**

The stable application of the charging order and the policies attendant to its application is evidenced by its constant application to the three major developmental progressions in business structures through the last 118 years:  the partnership, the limited liability partnership and, most recently, the limited liability company.

### 1)
### The Partnership

Until the middle of the nineteenth century businesses were seen as "aggregates" of their members, and liability against the firm lead to personal liability to the members, and liability against the members led to liability of the firm. <u>See</u> Daniel S. Kleinberger, Carter S. Bishop, & Thomas E. Geu, *Charging Orders and the New Uniform Limited Partnership Act: Dispelling Rumors of Disaster*, 18 Prob. & Prop. 30, 30 (July/Aug. 2004).  Toward the end of the century this view of business began to change, and the view that the firm was an "entity" separate from its members and its members separate from it, with a separation of property interests of the entity and members, began to emerge. <u>Id.</u> at 31.  Courts began to acknowledge this distinction and struggled with the ramifications of a judgment against an individual member of a firm.  <u>Id.</u>

England was the first country to provide a statutory mechanism that delineated how the charging order should operate, codified at § 23 of the Partnership Act of 1890. <u>Id.</u>  One of the very first cases to interpret the § 23 charging order provision was *Brown, Janson & Co. v. A. Hutchinson & Co.,* 1 Q.B. 737 (1895) (Lindley, J.).  The *Brown* court recounted the previous method of execution upon a judgment against a partner of a partnership which allowed a judgment creditor of an individual partner to execute upon assets of the firm itself, and then pointed out that, because of

the § 23 charging order provision, "the interest of [the judgment debtor and] co-partner in the business is charged just as if he had given an equitable charge over his interest. It does not harass or affect the other partners in the least … [t]he sheriff cannot now go and seize the property of the firm if a debt is due by one of the partners only." Id.  The court noted that the charging order lien by itself is not necessarily sufficient to produce satisfaction of the judgment:

> But then [the charging order alone] does not produce money, except money which the co-partners may hand over, or could hand over to the judgment debtor partner if it were not for the receiver.  In order to get the full benefit of the charge, the section proceeds: "The Court may direct all accounts and inquiries, and give all other orders and directions which might have been directed or given if the charge had been in favour of the judgment creditor by the partner, or which the circumstances of the case may require."

> Id.

Thus, from the very first case interpreting the charging order, it was understood that provision must be made for enforcing the charging order lien.

The United States soon followed this philosophical shift in the Uniform Partnership Act of 1914 and the Uniform Limited Partnership Act of 1916.  Kleinberger, et al, *supra* at 30-31.  Courts soon began to address the foreclosure issue.  Id.  J. Gordon Gose, in a 1953 law review article, noted the shift from the aggregate view to the current view of protected partnership property, stating that the Uniform Partnership Act, at § 25 "makes it perfectly clear that the charging order supersedes the former procedure of attachment of or execution against the *partnership property* by expressly forbidding both such attachments and executions." *J. Gordon Gose, The Charging Order Under the Uniform Partnership Act,* 28 Wash. L. Rev. & St. B. J 1, 19 (1953*)* (emphasis in original).

One early case that found an implicit foreclosure right was *Frankil v. Frankil*, 15 Pa. Dist & Cy. Rep. 103 (1931).  In *Frankil*, the court noted that the charging order statute "which provides several methods of redeeming the interest charged at any time before foreclosure, or in case of a sale being directed by the court … is meaningless unless it is construed as conferring upon the court the right to direct a sale," and that "the rule for the charging order [foreclosure] is made absolute."  Id.

The only decision regarding enforcement of a charging order under North Dakota partnership law was *Moen v. Moen*, 519 N.W.2d 10 (N.D. 1994).  *Moen* essentially followed *Frankil* in holding that a charging order could be satisfied by foreclosure and that if a sheriff's sale did fully satisfy the judgment amount, then the charging order would survive the sheriff's sale for the balance.  Id. at 14.  The court quoted 59A Am.Jur.2d, *Partnership* § 793 for the proposition that "a charging order against a debtor partner's interest in a partnership may authorize the judicial sale of the charged interest."  Id. at 12.

**2)**
The Limited Liability Partnership

For purposes of analogy to the LLC, the LLP is most similar.  The LLP contemplates a private business with relatively small number of stakeholders that is especially concerned with limited liability and tax consequences. Additionally, just as the LLP had been analogized to the general partnership statutes regarding charging order foreclosure, so has the LLC provision.

In *Madison Hills Limited Partnership II v. Madison Hills,* 35 Conn App. 81, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994), a Connecticut court approved the use of strict foreclosure in the limited partnership context, analogizing to both UPA and the UCC foreclosure process:

Finally, we are persuaded by an analogy to the Uniform Commercial Code (UCC). § 42a-9-501(1) authorizes a secured party to reduce its claim to judgment, on the debtor's default, and "foreclose or otherwise enforce the security interest *by any available judicial procedure.*" (Emphasis added.) The official comment accompanying the section explains that a secured party can foreclose by any procedure available under state law. "[A] judicial sale following judgment, execution and levy is one of the methods of foreclosure contemplated by [this section]...." Thus, both foreclosure by sale and strict foreclosure are available to secured parties under the UCC. We are persuaded that similar remedies should be available to charging creditors under the UPA.

Id. at 92, 644 A.2d 370 (citations omitted).  The court held that

the UPA does permit a charging creditor to enforce its charging order through strict foreclosure. In sum, we conclude that the charging order provisions of the UPA and the ULPA do not conflict, that the remedy provisions of the UPA apply to limited partnerships, that a charging creditor can foreclose on a partner's interest in the partnership and that strict foreclosure is available. Therefore, the trial court properly applied § 34-66 of the UPA to this case.

Id.

The nature of the limited liability is substantially similar for both the LLC and the limited partnership.  A subsequent Connecticut court applied the UPA/ULPA analogy to the LLC in *PB Real Estate, Inc. v. Dem II Properties*, Not Reported in A.2d, 1997 WL 625465 (Conn.Super. 1997).  That court found that the NLLC charging order "may be consistently interpreted in accordance with analogous provisions of the UPA and the ULPA governing charging orders." Id. at 3.

**3)**
The Limited Liability Company

There is very little case law in the LLC context to date (as well as none in North Dakota, and apparently none in the Eighth Circuit), in part because LLC's are a very recent statutory creation.

7

1 Michael T. Madison, Jeffry R. Dwyer, & Steven W. Bender, *Law of Real Estate Financing* § 1:55 (2007). But this apparent absence of case law also indicates that charging order foreclosures have not often been disputed to the point of litigation.

The minimal case law points towards the acceptance of foreclosure in the context of the LLC charging order. In *F.T.C. v. Peoples Credit First, LLC*, Not Reported in F.Supp.2d, 2006 WL 1169677, (M.D.Fla. 2006), the defendant was the sole member of eight LLC's. The plaintiff sought to foreclose upon the defendant's interests in the LLC's. Id. at 2. The defendant had argued that "the court may, at most, enter a charging order; as against his interest in the limited liability company[ies] to the extent of the unsatisfied judgment and may not foreclose on that interest." Id. at 2. The court rejected the defendant's argument and allowed the foreclosure, noting that "the purposes of the statute are not defeated by the proposed liquidation of the assets of these companies which presently all under receivership." Id.

Connecticut has taken the boldest stance in support of charging order foreclosures. In *Merchants Bank & Trust Co.*, *supra*, a judgment creditor was allowed to force a "turnover" of a member's LLC financial interest based upon the Connecticut LLC charging order statute. Id. at 8. It is notable that Connecticut's LLC charging order provision is substantially the same as North Dakota's and contains similar language limiting a judgment creditor's rights to those of an "assignee of the member's limited liability company interest." See C.G.S.A. § 34-171.

In *PB Real Estate, Inc. v. Dem II Properties*, Not Reported in A.2d, 1997 WL 625465 (Conn.Super. 1997), the court affirmed the use of foreclosure in the context of the LLC charging order, noting the similar impact that results from foreclosing upon a charging order lien in the context of partnerships, limited partnerships, and LLCs. Id. The Court noted that because of the

obvious similarity of the three types of businesses, "[a] contrary construction would defeat the legislature's intent to shield members of a limited liability company only from the liability of the entity, and not from personal liability." Id. at 4.

C.   **Foreclosure of a judgment debtor's financial interest in a limited liability company is allowed by the North Dakota Limited Liability Act, and is not prohibited.**

The North Dakota LLC statute does not prohibit foreclosure upon a member's financial interest but rather provides for foreclosure.  § 10-32-34 of the North Dakota Century Code, in reference to the extent of a charging order's efficacy, provides that a judgment creditor "has only the rights of an assignee of a member's financial rights under § 10-32-31." Id. § 10-32-31, which refers to assignments of financial rights, clearly states that, unless prohibited in a member-control agreement, "a member's financial rights are transferable *in whole* or in part."  § 10-32-31(1) (emphasis added).  It is notable that there is no such member control agreement in the instant case.

Thus, because § 10-32-34 allows a judgment creditor to use a charging order to exercise the rights of an assignee to the extent provided in § 10-32-31, and § 10-32-31 allows an assignee to receive a transfer-in-whole of a member's financial rights, a charging order may require the transfer of a judgment debtor's entire financial interest in an LLC. This rationale is in line with North Dakota's rules of statutory construction which requires a presumption that the "entire statute is intended to be effective," and that a "just and reasonable result … feasible of execution is intended." NDCC § 1-02-38.

Connecticut came to the same conclusion, allowing foreclosure, when it held that "rights of an assignee of the member's limited liability interest" included the right to foreclose upon a charging order lien.  PB Real Estate, 1997 WL 625465, *supra*.   Only one state, Alaska, has specifically

prohibited foreclosure.  Kleinberger, et al, *supra*, at 34.  However, the Alaska legislature made this decision out of a fear that "a judgment creditor … could … become an actual partner." Id.  This fear was unfounded because foreclosure never transfers management or control rights, only financial rights. Id.  Additionally, the legislative staff attorney who made this statement referred to a case in Connecticut that did not exist. Id.  Connecticut's limited liability partnership charging order allows foreclosure in the same manner as does Title 45 of the North Dakota Century Code.  See NDCC 45-10.2-64; Conn. Gen. Stat. § 34-349.

Foreclosure, a "forced assignment in whole" of a member's right to an entity's financial distributions, has always been available in the charging order context.  See e.g., *PB Real Estate, Inc.,* 1997 WL 625465, *supra.*  Foreclosure has consistently been applied as an alternative to a "forced assignment in part" when such a temporary charge will not realistically satisfy a judgment.  North Dakota LLC law in the charging order context allows a judgment creditor to charge a member's financial interest to acquire rights to the same extent as an assignee under § 10-32-31 which allows for assignment in whole or in part.

Even assuming that foreclosure was appropriate only under circumstances which would not negatively affect the entity whose interests were to be foreclosed, foreclosure would still be proper in this case.  The biggest negative effect that may result in the charging order foreclosure context consists in the impact that an "outside" judgment creditor may have upon the entity in question.  This impact is generally a result of demands made by such outsiders for untimely distributions contingent upon the threat of judicial dissolution. See Madison, et al, *supra*.

In this case, Leland Bertsch, the beneficiary of foreclosure currently holds a 70% ownership interest in Eagle Eye Development, LLC.  Bertsch also has a 70% interest in the governance of the

LLC and directs its operations to increase its value.  Thus, there will be no motive for the beneficiary to engage in any of the previously-described activities because the interests of the beneficiary are in line with the interests of the entity itself.  The fact that the charging order is the "exclusive remedy" of the judgment creditor of a LLC does not preclude charging lien foreclosure but rather indicates that the judgment creditor may only pursue the financial interests of the judgment debtor and may not pursue the LLC's assets directly.

Despite the clarity of § 10-32-31(1)'s provision for assignment in whole, some may argue that the charging order lien is the exclusive remedy of a judgment creditor of a debtor who has a membership interest in a LLC, and that foreclosure is prohibited.  On the surface, this argument appears logical, given that § 10-32-34(3) notes that § 10-32-34 is the "exclusive remedy" of a judgment creditor.  Id.  However, this argument does not account for the actual reason that the "exclusive remedy" language was first included in charging order statutes - to make explicit the fact that judgment creditors could not pursue entity assets directly.

The "exclusive remedy" language reiterates the fact that a judgment creditor may not pursue anything beyond the judgment debtor's financial interest in the business entity.  As with other entities, in a LLC there is a legitimate fear that an "outside" judgment creditor may act unreasonably in an attempt to dissolve the business to free up assets for distribution to satisfy the judgment.  See Brown, 1 Q.B. 737; Madison, et al, *supra.*  A foreclosure gives the judgment creditor an interest in an eventual dissolution, and so, the judgment creditor may attempt to unreasonably compel dissolution.  Id.  Thus, language intended to clarify that the charging order, and not a forced dissolution, is the exclusive remedy for a judgment creditor, is appropriate and necessary.

The view of a partnership shifted from the "aggregate" joint and several liability concept to the distinction between partnership property and individual partners' property, the charging order became necessary. J. Gordon Gose, in his 1953 law review article, noted this shift to the view of protected partnership property as well as the necessity of the charging order and the extent of its effect. Gose, *supra*. In a section of his article entitled "Is the Charging Order Procedure the Exclusive Remedy," the author notes, regarding the Uniform Partnership Act, that the § 25 charging order provision:

> makes it perfectly clear that the charging order supersedes the former procedure of attachment of or execution against the *partnership property* by expressly forbidding both such attachments and executions. However, since the act does not specifically say that a *partner's interest in the partnership* cannot be taken on attachment or execution, courts in a few cases have suggested the possibility of employing an attachment or execution of the intangible interest.
> Id. at 19-20 (emphasis in original).

Even as far back as 1953, the term "exclusive remedy" contemplated protection of firm property rather than a prohibition against charging order lien  foreclosure, or, as Gose phrased it, "employing an attachment or execution of the intangible interest." Id.

Further, Kleinberger, et al, note that:

> The charging order was designed to prevent a judgment creditor of an individual partner from obtaining access to the underlying partnership assets that gave value to an individual partner's interest in the firm. The charging order became the judgment creditor's "exclusive" (and, emphatically, indirect) access to those assets. That is, a judgment creditor of a partner had no rights whatsoever in the assets of the firm but was exclusively remitted to collecting whatever income stream those assets might produce for the judgment debtor.
> Kleinberger, et al, *supra* at 31.

From its very inception the charging order was intended to be the only method by which to acquire distributions of a firm, exclusive of the right to attack the firm assets directly.

Foreclosure is a vital component to the charging order since "foreclosure is not a separate remedy, but is and always has been a contemplated right of the holder of a charging order." Seminar, Jeffrey R. Matsen, *The Use of Limited Partnerships (LPS) and Limited Liability Companies (LLCS) in Asset Protection Planning*, 1 Adv. Legal Issues 51 (2007). Since a charging order is a type of lien, it only follows that the laws relating to the lien would not prevent its foreclosure since a lien that cannot be foreclosed upon cannot be effective.

The alternative explanation that the "exclusive remedy" language mandates that a judgment creditor may not pursue foreclosure through a charging order but may only charge the financial interest as a "forced assignment in par." would be a stark departure from prior application of the charging order with other business entities going all the way back to Brown in 1895. Brown, *supra*.

North Dakota's partnership and limited partnership statutes provide both that the charging order is the exclusive remedy of a judgment creditor of a partner regarding entity assets and that a charging order may allow foreclosure. See NDCC §§ 45-17-04(5); 45-10.2-64(5); RULPA § 703 (2001). Similarly, the *PB Real Estate, Inc.* court allowed foreclosure in the LLC context after it found that the partnership and limited partnership charging orders were analogous to the similar LLC provision. The Court noted the use of "exclusive remedy" language in all three provisions:

> [a] charging order constitutes a lien on the judgment debtor's transferable interest in the partnership. *The court may order a foreclosure of the interest subject to the charging ;order at any time.* The purchaser at the foreclosure sale has the rights of a transferee ... This section provides the *exclusive remedy* by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership.

13

*PB Real Estate, Inc.*. 1997 WL 625465, *2 fn. 2 (emphasis added).

When Alaska explicitly prohibited charging order foreclosures it prohibited "other remedies," including foreclosure, but nevertheless retained the exclusive remedy language.  Alaska Stat. § 32.11.340(b) (2000).  Thus, the need for "exclusive remedy" language appears independently of the need to prevent foreclosure.  A "foreclosure prohibition" interpretation fails because the "exclusive remedy" language appears even when foreclosure is explicitly provided. This further evidences the notion that the "exclusive remedy" language intended to limit the judgment creditor's execution to the member's interest and to prevent attacking entity assets directly.

Finally, despite the inclusion of "exclusive remedy" language in the North Dakota LLC Act, the charging order provision still provides a judgment creditor the option to force an assignment "in whole or in part."  See NDCC §§ 10-32-34, 10-32-31.  The relationship between §§ 10-32-34 and 10-32-31 is explicit because the former section specifically grants the judgment creditor the rights of an assignee under the latter section.  The statute is not ambiguous since it is not susceptible to different rational meanings.  See NDCC § 1-02-39.  Thus, to give efficacy to the "foreclosure prohibition" argument based upon the inclusion of "exclusive remedy" language would require ignoring the relation between § 10-32-34 and 10-32-31.  To ignore the extent of assignment authorized by § 10-32-31 in the context of § 10-32-34, which specifically refers to § 10-32-31 in that regard, would violate North Dakota's rules of statutory construction which presume that the entire statute must be given effect.  NDCC § 1-02-38(3); See also *Stein v. Workforce Safety & Ins.*, 710 N.W.2d 364 (N.D. 2006) ("We presume the Legislature did not intend an absurd or ludicrous result or unjust consequences").

The statute's "exclusive remedy" language, therefore, is intended to prevent direct pursuit of entity assets and is the most feasible interpretation. Therefore, foreclosure in the LLC context is not prohibited by the "exclusive remedy" language.

**D.     North Dakota's LLC statute should be "linked" to the North Dakota LLP statute in the charging order context.**

Business association statutes "may be 'linked' in the sense that rules from one statute are applied to a business form created under another statute." Larry E. Ribstein, *Linking Statutory Forms*, Law & Contemp. Probs. 186, 187 (Spr. 1995). Riberstein notes that linkage "is now spreading to new standard forms, including the limited liability company (the 'LLC')." Id. The LLC statutes borrow from general and limited partnerships as well as corporations, which "implies linkages between LLC's and the forms from which language is imported." Id. at 215. LLC's benefit from such linkage, when it is appropriate, because "there are no cases dealing with the many issues that may arise under the statutes." Id. Linking LLC statutes and other standard forms provides LLC law with interpretive materials associated with the linked forms. Id.

One potential problem occurs when linkage is not appropriate, such as when the original form does not translate to the "linked" form. Id. However, this problem does not occur in the charging order and foreclosure context because general and limited partnerships provide for both charging orders and foreclosure. Additionally, linking is implicitly allowed in North Dakota because, if there is an ambiguity in a particular statutory provision, North Dakota courts are bestowed with the ability to analogize to case law and other similar statutory provisions.

In *PB Real Estate, Inc.*, 1997 WL 625465, *supra*, the court linked the LLC charging order to the partnership and limited partnership charging orders. Id, at 3. The court held that although

Conn. Gen. Stat. § 34-171, Connecticut's LLC charging order statute, had not been interpreted by the courts regarding the ability to foreclose, "[t]he Appellate Court, however, has interpreted an identical provision of the Uniform Limited Partnership Act." Id. at 2. The court noted that the Appellate Court decision, *Madison Hills*, 35 Conn App. 81, 644 A.2d 363, *supra*, determined that both the partnership and limited partnership were similar in the sense that "[t]he charging order leaves the partnership intact but diverts to the judgment creditor the debtor partner's share of the profits." Id. The court in *PB Real Estate, Inc*. then made a similar analogy between the LLC statute and the UPA and ULPA statutes:

> [I]t follows that § 34-177 of the LLCA may be consistently interpreted in accordance with analogous provisions of the UPA and the ULPA governing charging orders. Therefore, the remedies available to judgment creditors under both the UPA and the ULPA would be available to judgment creditors under the LLCA.
>
> Id. at 3.

The court applied the foreclosure rationale to the LLC, noting that the Madison Hills court had "concluded that both the UPA and the ULPA permit a charging creditor to foreclose on a partner's interest in the partnership and thus a charging order can be enforced through strict foreclosure." Id. at 3.

Jeffrey Matsen notes that "in most jurisdictions where the LLC statute is silent or ambiguous on this [foreclosure] issue, the courts usually follow their interpretation" of whether that jurisdiction's RULPA statute allows foreclosure. Matsen, *supra* at 68. Nine jurisdictions including North Dakota "have revised their [limited partnership] statutes consistent with the 'New' RULPA (2001) to explicitly provide for foreclosure of a charged partnership interest in a limited partnership

as a permissible remedy."  Id.  Because North Dakota has adopted the "new" RULPA statute, codified at NDCC § 45-10.2-64, which explicitly provides for foreclosure, it follows that foreclosure must be allowed in the LLC context.

North Dakota appears to allow such linkage.  Although "[i]n this state there is no common law in any case where the law is declared by the code," NDCC § 1-01-06  North Dakota courts have "[a]ll the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carrying into effect the courts' judgments, orders, and other determinations, subject to a reexamination by the supreme court as provided by law." NDCC § 27-05-06(3).

Although there is a very strong argument, based upon the relation between § 10-32-34 and § 10-32-31, that the North Dakota Limited Liability Company Act directly provides for foreclosure, if that argument is not given great weight, then it cannot be said that the law regarding foreclosure of a charging order lien is "declared by code."  In such a case, reference to prior jurisprudence in North Dakota evidences a proclivity toward an ability to enforce a charging order lien through foreclosure.  See e.g. Moen, 519 N.W.2d at 12-14; NDCC 45-17-04; NDCC 45-10.2-64.  Thus, whichever argument is given more weight, they both come to the same conclusion: foreclosure of a charging order lien is proper in North Dakota.

Foreclosure is necessary in this case because there will be no distributions for many years and, if foreclosure is denied, the judgment creditor will be forced to continually renew the judgment and incur additional legal and court expenses.

Foreclosures, in the charging order context, have generally been allowed when satisfaction of a judgment will be frustrated within the "assignment in part" milieu:

17

> Suppose that a charging order brings the judgment creditor nothing – whether through disingenuousness of the partners or simply the nature of the firm and its assets. Must the judgment creditor wait forever, repeatedly renewing the order and, if necessary, the underlying judgment itself? At least since 1914, the answer under U.S. partnership law has been no; the judgment creditor may seek foreclosure of the charging order.

Kleinberger, et al, *supra,* at 32.

Thus, even if a judgment debtor has not acted disingenuously, the practicalities of the firm and its distribution scheme may necessitate foreclosure.

Here, because the only assets of the LLC are post offices that are subject to long-term leases there will be no distributions for many years. The judgment will have to be renewed several times. Thus, if foreclosure is not allowed, the judgment creditor will be forced to incur additional expenses merely to maintain the right to collect such "distant" distributions. On the other hand, if foreclosure is granted no judgment renewals will be necessary, at least not because of future distributions that will occur when the long-term leases are over and the post offices are sold.

No adequate distributions will be made for years and the distribution scheme in the current case makes it impractical to wait to collect on the judgment. Therefore, it is necessary to grant foreclosure of Roemmich's financial interest in Eagle Eye Development, LLC.

## II.

**A.  Foreclosure is necessary, because the judgment debtor has resisted all attempts made by the judgment creditor to satisfy the judgment.**

As note in the previous section, foreclosure may be appropriate because of a judgment debtor's (or other firm member) disingenuousness as well as because of the nature of the firm and its distribution scheme.  Kleinberger, et al, *supra.*  When a judgment debtor acts or fails to act in a manner which would allow satisfaction of the relevant judgment, foreclosure is warranted:

contrary construction would further frustrate the purpose of the statutory provisions designed to protect judgment creditors by allowing a party to defeat a charging order simply by characterizing a payment as something other than a "distribution," even when the available evidence suggests that a distribution is exactly what it was.

*PB Real Estate, Inc.*, 1997 WL 625465, *4.

In this case, the judgment debtor, Bruce Roemmich, failed to take out a bond, despite great likelihood of being able to do so. There is evidence that the bond would have only cost $7,000.00. There is also evidence that he had represented making $600,000.00 income to some friends and acquaintances. Requests for information necessary to satisfy the judgment have not been given. Thus, the judgment debtor has acted disingenuously, at best, and therefore, it is necessary to grant foreclosure of his financial interest in Eagle Eye Development, LLC. Meanwhile, Leland Bertsch and Bertsch Construction continue to incur substantial expenses on behalf of Eagle Eye, including debt maintenance in Eagle Eye's Loan guarantees.

## III.

## CONCLUSION

It is proper and necessary for the court to grant the defendants' motion for foreclosure upon Roemmich's financial rights in Eagle Eye Development, LLC. It is proper because foreclosure is not explicitly prohibited and because a reasonable interpretation of North Dakota's LLC charging order statute indicates that foreclosure is allowed and because foreclosure has been available in the charging order context since the charging order's inception. It is necessary in the current case because there will be no distributions for many years. The judgment creditor will otherwise be forced to continually renew the judgment, and because the Roemmich has resisted all attempts to allow for satisfaction of the judgment.

Dated this 29 day of December, 2008.

                              LARSON LATHAM BLISS HUETTL
                              Attorneys for the Defendants
                              521 East Main Ave.
                              P.O. Box 2056
                              Bismarck, North Dakota 58502-2056
                              PH:    (701) 223-5300
                              FX:    (701) 223-5366
                              email:  dbliss@bismarcklaw.com
                              BY: _____
                                  David R. Bliss (ID#04729)

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## SOUTHWESTER DIVISION

| | | |
|---|---|---|
| Bruce Roemmich, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 1:04-cv-00079** |
| | ) | |
| | ) | |
| Eagle Eye Development, LLC | ) | |
| and Leland Bertsch, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on December 29, 2008 the following documents:

1. **THIRD MOTION FOR EXECUTION OF JUDGMENT; AND**
2. **THIRD MEMORANDUM IN SUPPORT OF MOTION FOR EXECUTION OF JUDGEMENT**

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

**Mark R. Hanson**
mhanson@nilleslaw.com; bbrunelle@nilleslaw.com

Dated this 29th day of December, 2008.

LARSON LATHAM, BLISS HUETTL
Attorneys for the Defendants
521 East Main Street
P.O. Box 2056
Bismarck, North Dakota 58502-2056
Phone: (701) 223-5300
Fax:     (701) 223-5366
Email: dbliss@bismarcklaw.com
BY: /s/ David R. Bliss
    David R. Bliss (ID#04729)

T:\Eagle Eye - Foreclosure\Certificate of Service 12-29-08.wpd